FILED
2020 Jul-21 PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **VICKIE LYNN HELMS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 4:18-CV-1700-RDP** |
| | } | |
| **ANDREW SAUL, Commissioner of Social Security,**[1] | } | |
| | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Vickie Lynn Helms ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. Proceedings Below

This action arises from Plaintiff's application for disability and DIB, dated April 1, 2015, alleging disability beginning on February 1, 2005. (R. 81, 241-45). Plaintiff's date last insured ("DLI") was December 31, 2009. (R. 19, 255). Plaintiff's application was initially denied on May 15, 2015. (R. 82-87). Plaintiff then requested and received a hearing before Administrative Law Judge Michael L. Brownfield ("ALJ") on January 21, 2016. (R. 46-75, 91-92, 240). A vocational

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Fed. R. Civ. P. 25(d), he is therefore automatically substituted for Nancy A. Berryhill as the Defendant in this case.

expert was present and testified during the hearing. (R. 46). Because all of Plaintiff's treatment records from her treating physician were unavailable at the hearing, the ALJ scheduled a second hearing, which was held via video conference on July 28, 2017. (R. 32-43, 68-69). A medical expert was present and testified during the second hearing. (R. 32).

In his decision, dated September 21, 2017, the ALJ determined that Plaintiff was not disabled, as defined by Sections 216(i) and 223(d) of the Act, from her alleged onset date of February 1, 2005, through her DLI of December 31, 2009. (R. 27). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. (R. 1-5).

## II. Facts

Plaintiff was 52 years old at the time of the second hearing. (R. 51). Plaintiff has a GED and previous work experience as a cashier, paper deliverer, and animal caretaker. (R. 53-57, 250-51). Plaintiff alleges she last worked in 2004 as an alarm monitor at a security company, but the company went out of business later that year.[2] (R. 57). Plaintiff contends she has been disabled since February 1, 2005, due to back pain, neck pain, and residual knee pain from a car accident she was in at age 26, as well as problems with her left arm, phlebitis, chronic obstructive pulmonary disorder ("COPD"), fibromyalgia, neuropathy, hypertension, and emphysema. (R. 58-59, 76-77, 259).

During her alleged period of disability, Plaintiff was treated by Dr. Pat Herrera.[3] (R. 394-445, 470-522). Plaintiff first presented to Dr. Herrera on May 10, 2004, with back pain, leg pain,

[2] Although Plaintiff testified this was her most recent employment, in a treatment record dated June 3, 2008, Dr. Herrera commented, "hurt her back at work again." (R. 498). On January 4, 2007, Dr. Herrera commented "still working five days a week." (R. 514). On November 3, 2008, Dr. Herrera commented, "lost her job." (R. 494).

[3] Exhibits 5F and 6F in the record are duplicative and appear to be mislabeled. In the Court Transcript Index, Exhibit 5F is labeled, "Office Treatment Records, from ADVANCED IMAGING OF GADSDEN," and Exhibit 6F is labeled "Outpatient Hospital Records, dated 06/05/2008 to 01/27/2011, from RIVERVIEW MEDICAL CENTER-

trouble sleeping, a burning sensation while urinating, and anxiety. (R. 445, 521). Dr. Herrera diagnosed Plaintiff with arthritis, anxiety, depression, urinary tract infection, and restless leg syndrome. (*Id.*). He prescribed Klonopin, Rocephin, Celexa, and Darvocet. (*Id.*). One week later, during a follow-up visit, Plaintiff presented with no chief complaints. (R. 445-46, 521-22). Dr. Herrera reported "patient returns feeling much better. Sleeping better. Nerves are better. No crying lately. No new complaints." (*Id.*).

Plaintiff visited Dr. Herrera thirty-six more times prior to her DLI. (R. 394-445, 470-521). Each visit tells the same story: Plaintiff presented primarily with back pain, leg pain, arthritis, anxiety, and hypertension, but despite these and other complaints, each time Dr. Herrera found all of Plaintiff's systems were within normal limits. (*Id.*). For example, on July 17, 2006, Plaintiff presented with back pain, pain all over, stress, and a cough. (R. 444, 520). Dr. Herrera advised Plaintiff to discontinue smoking cigarettes and diagnosed her with back pain, anxiety, depression, and COPD, but he indicated all of her systems were within normal limits.[4] (*Id.*). On August 14, 2006, Plaintiff presented with pain, loss of sleep, stress, muscle spasms, leg pain, and hip pain. (R. 443, 519). Again, Dr. Herrera found all of Plaintiff's systems were within normal limits, although he diagnosed her with restless leg syndrome, anxiety, depression, arthritis, back pain, panic disorder, and a blood clot in her left leg. (*Id.*). Dr. Herrera adjusted Plaintiff's medications, ordered an x-ray and MRI of her lumbar spine, and a bone density examination. (*Id.*).

---

Dr. Pat Herrera." In reality, both Exhibits contain exactly the same documents: from Dr. Pat Herrera–Plaintiff's treatment records between June 19, 2006 and January 27, 2011; from Advanced Imaging of Gadsden–bone density examination, lumbar spine MRI, and knee MRI all taken on October 31, 2006; from Riverview Regional Medical Center–lumbar spine x-ray taken on October 11, 2006, cervical spine x-ray taken on September 24, 2010, and bloodwork/lab results from October 9, 2006 and January 15, 2010. (R. 397-445, 471-521). When referencing a page in one of the documents listed above, the court provides a citation to the relevant identical page in both Exhibits 5F and 6F.

[4] Plaintiff cites April 5, 2007 as the date Dr. Herrera diagnosed Plaintiff with COPD, but it appears from Dr. Herrera's records he first diagnosed Plaintiff with COPD on July 17, 2006. (R. 444, 520; Doc. # 9 at 23).

Plaintiff's x-ray of her lumbar spine on October 11, 2006 revealed normal vertebral body height and alignment, good preservation of intervertebral disc spaces, satisfactory facet alignment, intact pedicles, normal sacroiliac joints, and no vascular calcifications. (R. 450, 526).

On October 31, 2006, Plaintiff received a bone density examination, an MRI of her lumbar spine, and an MRI of her knee. (R. 447-49, 451-54, 523-25, 527-30). The bone density examination showed no evidence of increased fracture risk and indicated all measures of her hip and lumbar spine were higher than the average maximums and moderately to significantly higher than the mean for Plaintiff's age. (R. 447-48, 523-24). The MRI of Plaintiff's lumbar spine revealed mild to moderate facet degenerative changes in the lowest lumbar with no foraminal stenosis or impingement. (R. 449, 452, 525, 528). Plaintiff's disc spaces appeared unremarkable, and there were no significant abnormalities noted. (*Id.*). The MRI of Plaintiff's knee showed moderate effusion with osteophyte spurring, patellar degenerative joint disease/chondromalacia and osteophyte change, and ossified fragments adjacent to the patella within the joint space. (R. 451, 453-54, 527, 529-30). There were no meniscal tears or significant abnormalities of her cruciate or collateral ligaments. (*Id.*).

Plaintiff visited Dr. Herrera in February, March, June, July, August, September and October 2009 for "check-up/refills," but did not present with any chief complaints. (R. 410-16, 486-92). During the October visit, Dr. Herrera noted Plaintiff was wheezing, but again found all of her systems, including respiratory, were within normal limits. (R. 410, 486).

On January 15, 2016, Dr. Herrera completed a pre-printed medical opinion questionnaire regarding Plaintiff's impairments and her ability to do work-related activities. (R. 388-93). The first part of the questionnaire asked questions about Plaintiff's medical impairments. (R. 388-89). Dr. Herrera estimated Plaintiff's disability onset date was June 2006. (*Id.*). He listed Plaintiff had

the following symptoms: pain in back, knees, legs, and neck, fatigue, dizziness, and shortness of breath. (R. 388). He indicated that Plaintiff had pain doing any activity, such as sweeping the kitchen floor. (*Id.*). Dr. Herrera identified the following clinical findings and objective signs supporting his diagnoses: severe degenerative joint disease, severe COPD, severe neuropathy, and severe muscle atrophy. (*Id.*).

The second part of the questionnaire asked questions about Plaintiff's functional capacity. (R. 389). Dr. Herrera opined Plaintiff has the maximum ability to carry less than ten pounds on a frequent basis.[5] (*Id.*). He further opined Plaintiff could walk five minutes without rest due to her severe shortness of breath and pain. (R. 389-90). Dr. Herrera estimated that Plaintiff could continuously sit for thirty minutes at one time and continuously stand for five minutes at one time. (R. 390). He reported Plaintiff could sit for about one hour total in an eight-hour work-day and can stand for about one hour total in an eight-hour work-day. (*Id.*). Dr. Herrera opined that Plaintiff could occasionally grasp, push/pull, perform fine manipulation, twist, stoop, and climb stairs/ladder.[6] (R. 390-91). He noted that Plaintiff could never crouch, should avoid all exposure to extreme cold, heat, wetness, humidity, noise, fumes, odors, gases, poor ventilation, and hazards, and should avoid moderate exposure to noise. (R. 391). Dr. Herrera further opined that Plaintiff will need to take unscheduled breaks once an hour during an eight-hour work-day, her impairments will likely produce good and bad days, and she will likely be absent from work as a result of her impairments more than four days per month. (*Id.*). He indicated that emotional factors, such as depression and anxiety concerning her medical condition, likely contribute to the severity of her symptoms and functional limitations. (R. 392). Dr. Herrera also reported that Plaintiff had a

[5] The questionnaire defined frequent basis as 1/3 to 2/3 of an eight-hour working day.

[6] The questionnaire defined occasionally as less than 1/3 of an eight-hour working day.

marked limitation in her ability to deal with work stress. (*Id.*). When asked how often Plaintiff's symptoms are severe enough to significantly interfere with attention and concentration, he selected marked limitation. (*Id.*). Dr. Herrera opined any physical activity could aggravate Plaintiff's pain and shortness of breath, but her impairments do not affect any other work-related activities – that is – she does not need an assistive device for ambulation; does not need to elevate her leg; and does not have any sight, speech, auditory, or mental limitations. (*Id.*). Finally, Dr. Herrera indicated that Plaintiff's impairments are considered severe, have lasted since January 1, 2008, had a severe limitation on work activities since January 1, 2008, to the present, and have prevented Plaintiff from engaging in substantial gainful employment since January 1, 2008. (R. 393).

Concerning her daily activities, Plaintiff testified during the first hearing that she has had "pretty much" the same routine since 2005. (R. 60). She spends most of her day sitting or reclining with her legs propped up but is only able to sit for thirty minutes at one time. (R. 59, 61). Plaintiff claims she is trying to quit smoking, and she has decreased from three packs of cigarettes per day to one pack per day. (R. 53). She testified she is unable to do any deep cleaning but is able to wash dishes and vacuum once a week, and wash clothes once every two weeks. (R. 59-60). Plaintiff tries to bathe at least once a week but must use a shower seat because she has fallen several times due to her lack of balance. (R. 60). She testified she can drive a car for about thirty minutes but does so as little as possible. (R. 53, 63-64). Plaintiff stated she trained for a job one day at Exxon in 2006 but could not meet the physical demands of the job, such as standing, cleaning, and stocking, so she was not hired. (R. 64-65). Plaintiff testified she could work at the security company as an alarm monitor if the company still existed because she was allowed to prop her feet up and get up when needed. (R. 61-62). But, Plaintiff later testified she did not think she could handle the stress

of a job like her alarm monitoring job due to her depression since her mother and sister died.[7] (R. 62-63).

Also during the first hearing, a Vocational Expert ("VE") was present and provided testimony. (R. 46). The VE first categorized Plaintiff's past relevant work as a sales clerk (DOT # 290.477-014, light and semi-skilled, SVP 3); stocker (DOT # 922.687-058, medium and unskilled, SVP 2); newspaper deliverer (DOT # 292.363-010, medium and semi-skilled, SVP 3); supervisor of route delivery drivers (DOT # 292.137-014, light and skilled, SVP 5); animal caretaker (DOT # 410.674-010, medium and semi-skilled, SVP 4); and alarm monitor (DOT # 379.162-010, sedentary and skilled, SVP 6). (R. 69-70). The ALJ then posed several hypotheticals to the VE to determine whether Plaintiff was capable of performing her past relevant work or other work available in the national economy. (R. 71-73). In response to the first hypothetical question, which was premised upon a residual functional capacity of light work, the VE testified that the hypothetical claimant described by the ALJ would be unable to perform Plaintiff's past relevant work. (R. 71). After identifying various available light and sedentary jobs in response to the hypothetical questions, the VE testified that none of the jobs would permit absences with the frequency that Dr. Herrera and Plaintiff claimed she needed. (R. 73). Finally, the VE testified that if the ALJ gave great weight to the opinion of Dr. Herrera, Plaintiff would not be able to perform any full-time competitive work. (*Id.*).

Dr. Alexander Todorov, a medical expert, testified during the second hearing. (R. 34). Dr. Todorov identified the following medical conditions or impairments in the record as of December

---

[7] A disability determination form from Anniston Medical Clinic on August 4, 2016, indicates Plaintiff has two sisters who are alive and two sisters who are deceased. (R. 875). Plaintiff did not state what year her mother and two sisters died. (R. 63). Plaintiff testified she worked for several years after her first sister died. (*Id.*). The court notes Dr. Herrera commented on a treatment record dated October 31, 2013, "[Plaintiff's] mother died last week" and on October 16, 2014, commented "[Plaintiff's] sister passed away." (R. 784, 796).

31, 2009: COPD, chronic lower back pain with lumbar disc disease, depressive mood and anxiety, obesity, neuropathy, and a suggestion of fibromyalgia. (R. 37). However, he stated that as of December 31, 2009, Plaintiff did not have any impairment or combination of impairments that would meet or equal the criteria of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 37). When asked to state the basis for his opinion, Dr. Todorov answered,

> If you go to page 5-F18, we do have notes from the physician dated 9/8/2009, and the physical examination is all checked within normal limits. On page 17 of document 5-F, there is a mention of wheezing. . . There is an MRI of October 2006 . . . showing a facet degenerative joint disease. But this is not sufficient…to fulfill the criteria of the 1.04.

(R. 37-38). Dr. Todorov testified that the record contained a progression of Plaintiff's various medical problems, and although Plaintiff would meet or equal the criteria of listed impairments currently, there is no evidence she fulfilled the criteria before her DLI. (R. 38). Dr. Todorov also stated that based on his review of the medical record, as of her DLI, Plaintiff would have been capable of performing work at the sedentary level of exertion, limited to simple, routine work tasks, and could perform work involving concentrated exposure to extremes of temperature or pulmonary irritants. (R. 38-39).

**III. ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a

combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the instant case, the ALJ determined that Plaintiff last met the required insured status of the Act on December 31, 2009. (R. 19). He also found that Plaintiff had not engaged in substantial gainful activity between her alleged onset date through her date last insured. (*Id.*). Next, the ALJ found that Plaintiff had the following medically determinable severe impairments: mild lumbar

disc disease, mild cervical disease, mild knee arthritis, and COPD. (*Id*.). However, the ALJ further found that Plaintiff did not have an impairment or combination of impairments that meet or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 23). As the ALJ explained, although Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, her statements and other allegations concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 25).

The ALJ next concluded that, through her DLI, Plaintiff was not capable of performing past work. (R. 25). The ALJ then determined that Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except that Plaintiff was limited to simple, routine work tasks and no concentrated exposure to extreme temperatures or pulmonary irritants. (*Id.* at 23). Finally, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff was able to perform based on her age, education, work experience, and RFC. (R. 26). Based upon this analysis, the ALJ determined Plaintiff was not disabled. (R. 27).

## IV. Plaintiff's Argument for Remand or Reversal

Plaintiff offers five arguments for reversal: (1) the ALJ failed to accord proper weight to the opinions of Dr. Herrera, her treating physician, and failed to state good cause for doing so; (2) the ALJ erred by giving greater weight to the non-treating physician's opinion than to her treating physician's opinion; (3) the ALJ improperly applied the pain standard; (4) substantial evidence does not support the finding that disability is not supported in the record prior to 2009; and (5) substantial evidence does not support the ALJ's decision. (Doc. # 9). The court addresses each argument, in turn.

## V. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

It is axiomatic that a claimant bears the burden of proving disability. *See* 20 C.F.R. § 404.1512 (2018); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). A claimant must demonstrate disability on or before the last date they were insured. *Moore*, 405 F.3d at 1211 (citing

42 U.S.C. § 423(a)(1)(A)). If a claimant becomes disabled after losing insured status, the Commissioner will deny the claim despite the later onset of the disability. *See* 20 C.F.R. § 404.131 ("To establish a period of disability, you must have disability insured status.").

Here, Plaintiff's DLI was December 31, 2009. (R. 19, 255). Therefore, she had the burden of proving she was disabled between her alleged onset date of February 1, 2005 and her DLI of December 31, 2009. Upon careful review of the entire record, the court concludes Plaintiff has not met this burden. Thus, the court concludes that the Commissioner's decision is supported by substantial evidence, correctly applied the law, and is due to be upheld.

**A. Proper Weight was Accorded to the Medical Opinions in the Record.**

Plaintiff's first two arguments challenge the weight the ALJ afforded to the opinions of Dr. Herrera, her treating physician, and Dr. Todorov, a consulting physician. (Doc. # 9 at 1). The court concludes, contrary to Plaintiff's arguments, that the ALJ's evaluation complies with legal precedent.

In evaluating an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)). To determine the weight given to any medical opinion, an ALJ must consider several factors, including the examining relationship, the treatment relationship, the evidence presented to support the opinion, the consistency of the opinion with other evidence, and the specialization of the medical professional. 20 C.F.R. § 404.1527(c); *see Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 832 (11th Cir. 2011).

The testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.[8] *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Moreover, an ALJ must clearly articulate the reasons for affording less weight to a treating physician's opinions. *Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th Cir. 1997). The Eleventh Circuit has declined to second-guess the ALJ's assessment of the weight the treating physician's opinion deserves so long as the ALJ articulates a specific justification for it. *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore*, 405, F.3d at 1212 ).

On the other hand, the general rule is that the opinions of a non-examining physician are not entitled to the initial deference afforded to a physician who has an ongoing treating relationship with a claimant. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). However, medical consultants or medical experts are highly qualified medical specialists who are experts in Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii). Indeed, the ALJ may rely on a non-examining physician's opinion where it is consistent with the medical and opinion evidence. *See* 20 C.F.R. § 404.1527(c)(4); *see also Crawford*, 363 F.3d at 1160 (finding that the ALJ did not err by relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician). In short, the ALJ may reject

[8] The court notes Plaintiff filed her claim for DIB before March 27, 2017, so the new standard imposed by 20 C.F.R. § 404.1520(c)(a) does not apply here.

the opinion of any physician when the evidence supports a contrary conclusion. *Hearn v. Comm'r of Soc. Sec.*, 619 F. App'x 892, 895 (11th Cir. 2015) (citing *Bloodsworth*, 703 F.2d at 1240).

With these principles in mind, the court addresses the ALJ's assessment of the medical opinions in this matter.

**1. The Opinion of Treating Physician, Dr. Herrera.**

Plaintiff first argues that the ALJ erred by affording little weight to the opinion Dr. Herrera, her treating physician. (Doc. # 9 at 1). The court disagrees. There is no dispute that Dr. Herrera was Plaintiff's treating physician, and as her treating physician, Dr. Herrera remarked in a medical opinion, completed in 2016, that Plaintiff had disabling limitations dating back to June 2006. (R. 388-93). The ALJ stated with sufficient specificity that little weight was given to Dr. Herrera's opinion because the ALJ found it was "more consistent with recent medical evidence but [ ] not consistent with treatment notes prior to the date last insured." (R. 25). As the ALJ correctly noted, Dr. Herrera filled out the medical opinion on January 15, 2016, six years after Plaintiff's DLI. (R. 25). Where the medical record contains a retrospective diagnosis – for example, a physician's post-DLI opinion that the claimant suffered a disabling condition prior to the DLI – such a diagnosis is not entitled to deference unless corroborated by pre-DLI medical evidence. *See Mason v. Comm'r*, 430 F. App'x 830, 832 (11th Cir. 2011); *Goff ex rel. Goff v. Comm'r of Soc. Sec.*, 253 F. App'x 918, 921 (11th Cir. 2007) (holding that the ALJ properly rejected a treating source statement that appeared to relate only to the period of time after the date last insured).

In Dr. Herrera's post-DLI medical opinion, he opined Plaintiff was severely disabled due to severe degenerative joint disease, severe COPD, severe neuropathy, and severe muscle atrophy. (R. 388). However, Dr. Herrera's treatment records pre-DLI note all of Plaintiff's systems to be within normal limits. (R. 394-445, 470-522). Specifically, while Dr. Herrera diagnosed Plaintiff with degenerative joint disease on June 19, 2006, between her alleged onset date of disability and

DLI, his treatment notes do not indicate it was severe. (R. 445, 521). Dr. Herrera only reported observing degenerative joint disease on two other visits between Plaintiff's alleged onset date and her DLI, July 17, 2006, and July 7, 2009, and despite the diagnosis, found all of her systems within normal limits. (R. 413, 444, 489, 520). Additionally, an x-ray of Plaintiff's lumbar spine, taken on October 11, 2006, revealed normal findings; a bone density examination, performed on October 31, 2006, revealed normal findings; an MRI of Plaintiff's lumbar spine, taken on October 31, 2006, revealed only mild/moderate facet degenerative changes in the lowest lumbar elements, with no significant focal abnormalities or herniation otherwise noted; and an MRI of Plaintiff's knee, taken on October 31, 2006, revealed moderate effusion with osteophyte spurring, patellar degenerative joint disease/chondromalacia, osteophyte change, and ossified fragments adjacent to the patella within the joint space, but no meniscal tears or significant abnormalities of the cruciate or collateral ligaments.[9] (R. 447-54, 523-30).

Similarly, despite diagnosing Plaintiff with COPD on July 17, 2006, Dr. Herrera found all of Plaintiff's systems, including respiratory, to be within normal limits. (R. 444, 520). Between Plaintiff's alleged onset date and her DLI, COPD is reported in Dr. Herrera's treatment records on July 17, 2006, April 5, 2007, January 15, 2008, and "wheezing" is noted on October 6, 2009. (R. 410, 426, 435, 444, 486, 502, 511, 520). Nevertheless, Dr. Herrera found all of Plaintiff's systems within normal limits each visit. (*Id.*). Moreover, between Plaintiff's alleged onset date and her DLI, Dr. Herrera did not refer Plaintiff for a spirometry test, chest x-ray, or pulmonary analysis.

[9] In her brief, Plaintiff alleges disability due to thoracic spondylosis, but that diagnosis is not documented in the record until August 10, 2011, well after her DLI. (R. 370, Doc. # 9 at 2). Plaintiff also alleges disability due to discogenic disease at the C4-5 and C5-6 levels with secondary degenerative changes, but that diagnosis is not documented in the record until September 24, 2010, also after her DLI. (R. 468; Doc. # 9 at 2).

Finally, Dr. Herrera reported in his 2016 medical opinion that Plaintiff was severely disabled as a result of severe neuropathy and severe muscle atrophy. (R. 388). While Plaintiff's neuropathy is documented in the record, there is no evidence it was severe, as Dr. Herrera indicated all of Plaintiff's systems were within normal limits. (R. 424, 435-37, 500, 511-13). Additionally, there is no evidence in the record that Dr. Herrera diagnosed Plaintiff with muscle atrophy between her alleged onset date and her DLI. (R. 394-445, 470-522).

The ALJ's determination that Dr. Herrera's opinion in 2016 was inconsistent with medical records between Plaintiff's alleged onset date and DLI is supported by substantial evidence. Thus, the ALJ properly found there was good cause to give little weight to the opinion of Dr. Herrera and clearly articulated his justification for that determination.

**2. The Opinion of Consulting Physician, Dr. Todorov.**

Plaintiff also argues the ALJ erred by affording great weight to the opinion of Dr. Todorov, a consulting physician. (Doc. # 9 at 1). The court disagrees. The ALJ properly afforded great weight to the opinion of Dr. Todorov because:

> [H]e is familiar with Social Security regulations and was able to review the entire record. In addition, his opinion indicating that [Plaintiff's] impairments were not disabling prior to the Date Last Insured are consistent with the treatment notes… indicating that she had essentially normal examinations between the alleged onset date and the Date Last Insured.

(R. 25). During the second hearing, Dr. Todorov opined that Plaintiff did not have an impairment that met or equaled the relevant listing prior to December 31, 2009. (R. 37). He also testified that as of her DLI, Plaintiff would have been capable of performing work at the sedentary level of exertion, limited to simple, routine work tasks. (*Id.*). The ALJ did not unduly rely on or blindly defer to Dr. Todorov's opinion. Thus, although Dr. Todorov was a non-treating physician, his findings were more consistent with the record, and therefore were properly given more weight than

the opinion of Dr. Herrera. *See Forrester v. Comm'r of Soc. Sec.*, F. App'x 899, 903 (11th Cir. 2012); *Wilkerson v. Comm'r of Soc. Sec.*, 289 F. App'x 384, 386 (11th Cir. 2008).

**3. The ALJ and Dr. Todorov Properly Considered Exhibit 6F.**

Plaintiff alleges the ALJ did not consider the earlier records of Dr. Herrera (Exhibit 6F) that supported Dr. Herrera's opinion provided in 2016. (Doc. # 9 at 2). Plaintiff's argument has no merit. It is readily apparent the ALJ considered the records when making his disability determination because he accurately summarized and cited Dr. Herrera's earlier treatment records in his opinion. (R. 19-22). The fact that the ALJ referred to them as records of treatment from "Advanced Imaging of Gadsden" is of no consequence because the records, regardless of their source, are inconsistent with Dr. Herrera's opinion in the medical opinion questionnaire. (*Id.*).

Plaintiff also alleges Dr. Todorov, did not acknowledge the earlier records of Dr. Herrera because he did not reference Exhibit 6F in his testimony. (Doc. # 9 at 28). This argument is also without merit. During the hearing, Dr. Todorov testified that Plaintiff did not have any impairment or combination of impairments that would meet or equal the criteria of the listed impairments as of December 31, 2009. (R. 37). Dr. Todorov stated the basis of his opinion was "documents like 5F." (*Id.*). He specifically referenced Plaintiff's visit with Dr. Herrera on September 8, 2009, as well as the results of Plaintiff's lumbar spine and knee MRI performed on October 31, 2009. (R. 37-38). In the record, the court discovered Exhibit 6F is a duplicate of Exhibit 5F, and both contain Dr. Herrera's earlier medical records. The records from Plaintiff's September 8, 2009 visit with Dr. Herrera are contained in Exhibit 5F on page 411 as well as Exhibit 6F on page 487. (R. 411, 487). Accordingly, it is clear Dr. Todorov considered the earlier records of Dr. Herrera, which are contained in both Exhibits 5F and 6F.

**B. The ALJ Properly Applied the Pain Standard.**

Plaintiff next argues that the ALJ improperly applied the Eleventh Circuit pain standard. (Doc. #9 at 1). The court disagrees.

When a claimant alleges disability through subjective complaints of pain and other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: "(1) evidence of an underlying medical condition, and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the claimed pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also* 20 C.F.R. § 404.1529. If the ALJ determines that a claimant has a medically determinable impairment that could reasonably be expected to produce their pain, he must then evaluate the intensity and persistence of the claimant's symptoms to determine if they limit their capacity to work. 20 C.F.R. § 404.1529(c)(1).

During this assessment, an ALJ is to consider a claimant's testimony and any inconsistency between the testimony of symptoms and any other evidence. 20 C.F.R. § 404.1529(c)(3)-(4). "After considering a claimant's complaints of pain, an ALJ may then reject them as not creditable."[10] *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If the ALJ rejects a claimant's testimony regarding pain, the ALJ must "articulate explicit and adequate reasons for doing so." *Dyer*, 395 F.3d at 1210 (quoting *Foote v. Charter*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).

Here, the ALJ determined Plaintiff had several underlying medical conditions. (R. 19). ("[Plaintiff] has the following severe impairments: mild lumbar disc disease, mild cervical disk

[10] Social Security Ruling 16-3p, 2016 SSR LEXIS 4 became effective March 28, 2016 and superseded SSR 96-7p, 1996 SSR LEXIS 4. The new regulation removes the term "credibility" from the policy and clarifies that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 SSR LEXIS 4.

disease, mild knee arthritis, and chronic obstructive pulmonary disease.") (*Id.*). Although the record does not provide objective evidence confirming the severity of Plaintiff's alleged pain, the ALJ found her "medically determinable impairments could reasonably be expected to produce some of … [her] symptoms." (R. 25). However, the ALJ discredited Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms because they were not consistent with the medical evidence between her alleged onset date of disability and her DLI. (*Id.*). Plaintiff's testimony during the ALJ hearing – which indicated she must spend all day with her legs propped up due to disabling pain all over her body – contrasts sharply with relatively normal medical records between her alleged onset date and the DLI described above.

Plaintiff argues that the ALJ erred in disregarding her objective causes of pain, such as degenerative disk disease ("DDD") at C4-5 and C5-6, thoracic spondylosis, lumbar DDD, neuropathy, COPD, severe leg pain and swelling due to phlebitis, hypertension, and fibromyalgia. (Doc. # 9 at 2, 36). This argument is misplaced because these diagnoses are not supported in the record between Plaintiff's alleged onset date of disability and her DLI.

The record indicates Plaintiff was diagnosed with DDD at C4-5 and C5-6 on September 24, 2010, and thoracic spondylosis on August 10, 2011, meaning that both diagnoses were after her DLI. (R. 370, 468, 544). Plaintiff argues the results of her lumbar MRI conducted on October 31, 2006, establish she has lumbar DDD, but the MRI results of her lumbar spine revealed only mild to moderate facet degenerative changes with no significant abnormalities. (R. 449, 452, 525, 528; Doc. # 9 at 36). Neither the MRI nor any other medical evidence in the record supports Plaintiff's assertion that she had DDD at C4-5 and C5-6 between her alleged onset date of disability and her DLI. (*Id.*).

Further, Plaintiff argues the results of a pulmonary function analysis performed on July 29, 2016, establish she has an impairment that meets Listing 3.02(A). (R. 872; Doc. #9 at 23). Although the pulmonary function analysis results may establish Plaintiff has an impairment that meets Listing 3.02(A) on July 29, 2016, the testing was not performed until more than five years after Plaintiff's date last insured. (R. 872). Therefore, as the ALJ correctly noted, the results cannot be used to establish disability. *See Moore*, 405 F.3d at 1211.

Likewise, although Plaintiff's hypertension is documented in the record between her alleged onset date and DLI, Plaintiff did not testify to any limitations resulting from her hypertension, and it appears to be controlled with medication. There is no indication that this impairment caused her any work-related limitations during the relevant period. Finally, the court cannot find evidence or documentation for the diagnosis of fibromyalgia or phlebitis between Plaintiff's alleged onset date of disability and her DLI. (R. 394-468, 469-544).

Thus, based on the foregoing, the court concludes that substantial evidence supports the ALJ's decision, and the ALJ did not clearly err in discrediting Plaintiff's testimony. *See Jarrell v. Comm'r of Soc. Sec.*, 433 Fed. Appx. 812, 814 (11th Cir. 2011); *Werner v. Comm'r of Soc. Sec.*, 421 Fed. Appx. 935, 939 (11th Cir. 2011) ("The question is not . . . whether the ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it.").

### C. Substantial Evidence Supports the ALJ's Determination that Disability is Not Supported in the Record Prior to 2009.

Next, Plaintiff argues that the ALJ's determination that disability is not supported in the record prior to 2009 is not supported by substantial evidence. This argument is without merit. Between Plaintiff's alleged onset date of disability and her DLI, normal treatment records from Plaintiff's treating physician, normal x-rays of her lumbar spine, relatively normal MRI results of

her lumbar spine and knee, and a normal bone density examination constitute substantial evidence for the ALJ's determination that disability is not supported in the record prior to 2009. *See Martin*, 894 F.2d at 1529 (holding so long as the ALJ's findings are supported by substantial evidence, they are conclusive and the reviewing court must defer to the ALJ's decision even if the evidence may preponderate against it).

**D. Substantial Evidence Supports the ALJ's Decision.**

Finally, Plaintiff argues that the ALJ's ruling was not based on substantial evidence. She asserts that the Vocational Expert's testimony could not constitute substantial evidence because "the hypothetical question relied upon did not accurately state [her] pain level or her residual functional capacity." (*Id.*). To the contrary, the court concludes substantial evidence supports the ALJ's decision.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). However, the ALJ is not required to include findings in the hypothetical that the ALJ has properly rejected as unsupported. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

As previously discussed, the ALJ properly rejected Dr. Herrera's 2016 medical opinion, thus the ALJ did not err by failing to include the impairments described by Dr. Herrera in the hypothetical. Likewise, the ALJ concluded that Plaintiff's testimony about the severity of her impairments was contradicted by relatively normal MRI results, unremarkable x-ray imaging, and normal treatment records from her treating physician during her alleged onset date and DLI. Thus, the ALJ's determination that Plaintiff could perform sedentary work and that such jobs exist in the national economy is supported by substantial evidence.

Substantial evidence also supports the ALJ's determination of Plaintiff's RFC. A claimant's RFC is an administrative finding as to what a claimant can do in a work setting given the limitations caused by their impairments. *See* 20 C.F.R. §§ 404.1527(d), 404.1545(a), 416.927(d), 416.945(a). Statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC based on the relevant medical evidence and other evidence included in the case record. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945 (a)(3). A claimant's statements about the frequency, intensity, and duration of her symptoms will only impact her RFC to the extent they are consistent with other evidence of record. *See* 20 C.F.R. §§ 404.1529, 416.929.

Here, the ALJ considered Plaintiff's testimony and her medical records, which included "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," when assessing Plaintiff's residual functional capacity. 20 C.F.R. § 404.1529(a); (R. 24). The court concludes substantial evidence supports the ALJ's determination that between her alleged onset date and her DLI, Plaintiff could perform sedentary work, except she was limited to simple, routine work tasks and no concentrated exposure of temperatures or pulmonary irritants.[11] (R. 23).

## VII. Conclusion

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in

[11] To be able to perform sedentary work, an individual must be able to lift "no more than 10 pounds at a time" and occasionally lift or carry articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.1567(a).

reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 21, 2020.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE